UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE ELAINE LOHMAN,

                    Plaintiff,                Civil Action No. 16-10019
                                               Honorable Victoria A. Roberts
                                               Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 21]**

Plaintiff Michelle Lohman ("Lohman") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [16, 21], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.**       **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Lohman is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [21] be GRANTED, Lohman's Motion for Summary Judgment [16] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.      REPORT

### A.      Procedural History

On July 1, 2013, Lohman filed an application for DIB, alleging a disability onset date of June 20, 2013.  (Tr. 140-46).  This application was denied initially on September 26, 2013.  (Tr. 74-77).   Lohman filed a timely request for an administrative hearing, which was held on December 19, 2014, before ALJ David Begley.  (Tr. 30-59).  Lohman, who was represented by attorney Michael Korby, testified at the hearing, as did vocational expert Susanna Roche.  (*Id.*). On April 17, 2015, the ALJ issued a written decision finding that Lohman is not disabled under the Act.  (Tr. 18-25).  On October 30, 2015, the Appeals Council denied review.  (Tr. 1-6). Lohman timely filed for judicial review of the final decision on January 4, 2016.  (Doc. #1).

### B.      Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

2

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.     Background

#### *1.     Lohman's Reports and Testimony*

At the time of the hearing, Lohman was 55 years old, and at 5'10" tall, weighed 235 pounds. (Tr. 34-35). She completed high school and was divorced, with two grown children. (Tr. 38, 160). She was living in a house with a friend who had cancer, acting as his "companion" in exchange for room and board. (Tr. 38, 40, 213). Previously, she worked as a cashier and as a housekeeper. (Tr. 35-36, 38). Lohman testified that she was terminated in May of 2013 when she was no longer able to perform her job because of left arm pain. (Tr. 35-36, 159). Since that time, her only "work" has consisted of volunteering at a bingo hall for "four hours here and there," until it closed down. (Tr. 35, 47). She now alleges disability as a result of neuropathic pain in her left arm, numbness in her left lower extremity, dystonia in her right hand, back pain, chronic obstructive pulmonary disease ("COPD"), and diabetes. (Tr. 36-37, 159, 189).

Lohman testified that she is able to care for her own personal needs and perform some

3

household chores, such as caring for her companion's cats, preparing sandwiches, grocery shopping, and doing laundry. (Tr. 39, 44-45, 191-92). She is able to drive but does not drive long distances because her "hands go numb." (Tr. 39, 192). Lohman further testified that she cannot sit too long because of her back pain, and cannot walk more than a block because she "run[s] out of air" and has to "get her breathing under order." (Tr. 43, 48-49, 51). She can stand for 15-20 minutes at a time and lift a six-pack of soda. (Tr. 49). She spends most of her days watching television, just "hang[ing] out." (Tr. 45).

### 2.    *Medical Evidence*

The Court has thoroughly reviewed Lohman's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.    *Vocational Expert's Testimony*

Susanna Roche testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 54-58). The ALJ asked the VE to imagine a claimant of Lohman's age, education, and work experience who can perform light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to extreme heat and cold, humidity, wetness, and pulmonary irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. (Tr. 56). The VE testified that the hypothetical individual would be capable of performing Lohman's past relevant work as a cashier. (*Id.*).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Lohman is not disabled under the Act. At Step One, the ALJ found that Lohman has not engaged in substantial gainful

4

activity since June 20, 2013 (the alleged onset date).  (Tr. 20).  At Step Two, the ALJ found that

Lohman has the severe impairments of COPD, cardiomyopathy, hypertension, and diabetes

mellitus.  (*Id.*).  At Step Three, the ALJ found that Lohman's impairments, whether considered

alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 21).

The ALJ then assessed Lohman's residual functional capacity ("RFC"), concluding that

she is capable of performing light work, with the following additional limitations:  no climbing

of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps, balancing, stooping,

kneeling, crouching, and crawling; and no concentrated exposure to extreme heat and cold,

humidity, wetness, and pulmonary irritants, such as fumes, odors, dust, gases, and poorly

ventilated areas.  (Tr. 22).

At Step Four, the ALJ determined that Lohman is capable of performing her past relevant

work as a cashier.  (Tr. 24).  As a result, the ALJ concluded that Lohman is not disabled under

the Act.  (Tr. 25).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not

remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal

quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's

decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility

of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13;

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may

look to any evidence in the record, regardless of whether it has been cited by the Appeals

Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human

Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ

or this court discuss every piece of evidence in the administrative record.  *See Kornecky v.

Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

evidence without directly addressing in his written decision every piece of evidence submitted by

a party.") (internal quotations omitted).  If the Commissioner's decision is supported by

substantial evidence, "it must be affirmed even if the reviewing court would decide the matter

differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v.

Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted);

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence

supports the ALJ's decision, this Court defers to that finding 'even if there is substantial

evidence in the record that would have supported an opposite conclusion'").

### F.    Analysis

In her motion, Lohman argues that the ALJ erred in (1) evaluating the severity of her musculoskeletal impairments; (2) assessing her RFC; and (3) evaluating her credibility. (Doc. #16 at 5-18). In addition, Lohman argues that remand is warranted for consideration of new evidence. (*Id.* at 3-5). Each of these arguments is addressed below.

#### 1.    *Any Errors the ALJ Made in Evaluating Lohman's Musculoskeletal Impairments are Harmless*

Lohman argues that the ALJ erred in finding, at Step Two of the sequential evaluation analysis, that her back pain was not a severe impairment.[1]  (*Id.* at 5-6). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. §404.1520(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §404.1521(b). In this case, the ALJ noted that Lohman had complained of and been treated for back pain, but concluded that the objective evidence did not establish that this impairment was severe. (Tr. 21). As explained below, the record supports this conclusion.

Lohman reported back pain at visits to her primary care physician, Saska Sookra, M.D., in April, May, and June 2014. (Tr. 401, 406, 415, 418). X-rays of her lumbar spine taken on

---

[1] Lohman also argues that the ALJ erred in finding that she did not have a medically determinable impairment of dystonia. (Doc. #16 at 6). The ALJ noted, though, that "the record is devoid of any evidence showing that she has been diagnosed with or treated for this condition" (Tr. 21), and Lohman has pointed to no medical evidence to the contrary. Lohman's own testimony and reports are insufficient:  rather, she is required to prove the existence of a medically determinable impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§404.1508. Here, where Lohman failed to do so, she did not meet her burden of proving the existence of this condition, and the ALJ's finding that dystonia is not a medically determinable impairment is supported by substantial evidence.

2016-cv-10019-VAR-DRG   Doc # 23   Filed 01/12/17   Pg 8 of 18   Pg ID 658

April 10, 2014, showed straightening of the normal lumbar lordosis, facet joint arthopathy, and spondylosis at T11-12.  (Tr. 455).  Follow-up x-rays taken in June of 2014 were stable, showing mild spondylosis at T11-12 and facet joint arthropathy.  (Tr. 441).  Nonetheless, on examination, Dr. Sookra consistently observed normal gait and station and did not note any functional abnormalities.  (Tr. 398, 402, 407, 411, 420, 488, 492, 496).  And, as the ALJ noted, Lohman had full strength and range of motion, with no tenderness, at visits to her cardiologist in July 2014.  (Tr. 21, 520, 523).  Given all of these facts, Lohman has not shown that the ALJ erred in finding that her back pain did not significantly limit her ability to perform basic work activities.[2]

In addition, even if the ALJ erred in finding Lohman's musculoskeletal impairment non-severe, such error was harmless because the ALJ "considered this impairment in assessing [Lohman's] RFC."  (Doc. #21 at 17).  The law provides that, if the ALJ considered *all* of Lohman's impairments – both severe and non-severe – in formulating her RFC, then his failure to find additional severe impairments at Step Two does not constitute reversible error.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Here, it is clear that, in formulating Lohman's RFC, the ALJ considered her back impairment, as he specifically wrote, "I find [Lohman's] musculoskeletal impairment is non-severe.  Nevertheless, I adopted the following limitations to accommodate this impairment:  light work; prohibited from climbing of ropes, ladders, and scaffolds; and occasional climbing of ramps, and stairs, balancing,

---

[2] Lohman was also required to prove that the impairment had lasted or was expected to last for a continuous period of at least twelve months. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009); 20 C.F.R. §404.1509.  As the ALJ noted, however, she failed to do so. (Tr. 21).  Even accepting as true Lohman's hearing testimony in December 2014 (which the ALJ supportably found not entirely credible), the ALJ appropriately recognized that she fails to satisfy the duration requirement because she first reported back pain in April 2014.  (Tr. 21, 418).

kneeling, stooping, crouching, and crawling." (Tr. 21).[3] Thus, because the ALJ considered

Lohman's non-severe musculoskeletal impairment throughout the sequential evaluation process,

any error in his failure to find this condition severe is harmless and does not warrant remand.

*See, e.g., Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (failure to find

claimant's carpal tunnel syndrome severe was harmless because the ALJ considered that

impairment in assessing the RFC).

### 2.    *The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ determined that Lohman has the RFC to perform light work,

with the following additional limitations:   no climbing of ladders, ropes, or scaffolds; only

occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling;

and no concentrated exposure to extreme heat and cold, humidity, wetness, and pulmonary

irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. (Tr. 22).

In her motion, Lohman argues that this RFC is not supported by substantial evidence

because it does not include any manipulative limitations. (Doc. #16 at 6-8). The record does

contain evidence of left hand swelling, pain, and/or numbness in the summer of 2013 (Tr. 243,

272, 275, 340), and indicates that Lohman was assessed at that time with "likely"

mononeuropathy (Tr. 241). But, her motor, sensory, and nerve function remained intact (Tr.

245, 247, 276), and no objective testing ever confirmed neuropathy. Moreover, there is no

evidence of limitation in either of Lohman's hands or arms after August 2013. Dr. Sookra never

noted any musculoskeletal abnormalities (Tr. 388, 397-98, 402, 406-07, 410-11, 414-15, 420,

500), and in July 2014, Lohman had normal upper extremity strength and range of motion (Tr.

520, 523). Although Lohman repeatedly cites to her own hearing testimony and reports, the ALJ

_____

[3] Additionally, later in his decision, the ALJ wrote that he "adopted more postural limitations
[than had been suggested by the state agency medical consultant] to accommodate [Lohman's]
non-severe musculoskeletal impairment…" (Tr. 24).

supportably found her subjective complaints less than fully credible, *infra* at 13-14.  Thus, where Lohman has come forward with no credible evidence of manipulative limitations, she has not shown that the ALJ erred in declining to include such a limitation in her RFC.

Lohman also alleges – with no real degree of specificity – that the ALJ's RFC finding "failed to properly account for [her] COPD [and] heart condition …."[4]  (Doc. #16 at 9).  The record indicates that Lohman was hospitalized from June 17 through June 20, 2013, with chest pain, shortness of breath, and left hand pain.  (Tr. 241-45).  An electrocardiogram and chest x-ray were negative (Tr. 245); a diagnostic cardiac catheterization showed normal coronary arteries and normal left ventricular systolic function (Tr. 257); and a stress echo showed an intermediate to high probability of exercise induced ischemia (Tr. 262).  A week later, however, when Lohman returned to the emergency room with hives and itching, she denied chest pain, shortness of breath, and edema, and her cardiac and respiratory examinations were normal.  (Tr. 284-85).

Lohman was also hospitalized with chest pain from July 24 through July 26, 2013, while caring for her companion in Florida.  (Tr. 313-15).  An angioplasty showed an area of high-grade stenosis (Tr. 297-98), and an echocardiogram showed a left ventricular ejection fraction ("LVEF") of 35-40% (Tr. 300-02).[5]  A chest x-ray was normal, and a chest CT showed mild emphysema with two small nodules.  (Tr. 304-05).  Doctors assessed cardiomyopathy, coronary artery disease, a pulmonary nodule, hypertension, and dyslipidemia.  (Tr. 313).  Two weeks later,

---

[4] Lohman also asserts in passing that the ALJ's RFC finding failed to account for her "lower extremity neuropathy" (Doc. #16 at 9), but she has failed to point to any evidence of this condition.  Although she reported numbness in her lower extremities to Dr. Sookra in April and May 2014 (Tr. 406, 419), she later denied swelling, paresthesia, and difficulty with gait (Tr. 386, 491, 519, 523).  Moreover, Dr. Sookra consistently observed normal gait and station (Tr. 398, 402, 407, 411, 420, 488, 492, 496), and in July 2014, she showed intact nerves, full strength, and full range of motion in her lower extremities (Tr. 520, 523).

[5] A normal LVEF ranges from 55-70%.  *Ejection Fraction*, Cleveland Clinic, http://my.clevelandclinic.org/health/articles/ejection-fraction (last visited January 11, 2017).  An ejection fraction of less than 40% may confirm a diagnosis of heart failure.  *Id.*

though, when Lohman followed up with Edmund Bermudez, M.D., she denied chest pain or pressure, palpitations, and dyspnea.  (Tr. 289).  Dr. Bermudez noted normal respiratory and cardiac functioning; indicated that Lohman was "recovering very well" from her recent hospitalization; and released her to begin physical activity.  (Tr. 290-91).

Lohman returned to the emergency room on August 26, 2013, with pain in her left arm and chest pain similar to what she experienced during her last admission.  (Tr. 340).  An echocardiogram showed a LVEF of 65-70%, however, and Lohman's arm and chest pain did not recur.  (Tr. 338, 365-66).  Doctors diagnosed atypical chest pain with resolving ejection fraction, coronary artery disease, diabetes mellitus, hypertension, and COPD.  (Tr. 338).

On September 25, 2013, state agency consultant Sonia Ramirez-Jacobs, M.D. opined that Lohman's cardiomyopathy, hypertension, and diabetes were severe impairments.  (Tr. 67).  She further opined that Lohman could lift up to 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, and stand or walk for six hours in an eight-hour workday.  (Tr. 69).  In addition, Dr. Ramirez-Jacobs opined that Lohman could occasionally climb and crawl; frequently balance, stoop, kneel, and crouch; and should avoid concentrated exposure to extreme temperatures, wetness, humidity, and pulmonary irritants.  (Tr. 69-70).

On April 2, 2014, Lohman saw Dr. Sookra for the first time, reporting cough, shortness of breath, muscle aches, joint pain, back pain, numbness, and tingling.  (Tr. 419).  Dr. Sookra encouraged aerobic exercise for thirty minutes five days per week.  (Tr. 421).  When Lohman presented for a colonoscopy on April 24, 2014, she denied chest pain, dyspnea, cough, and wheezing.  (Tr. 392).  At a May 21, 2014 visit to Dr. Sookra, Lohman reported trouble breathing, nasal congestion, cough, wheezing, and shortness of breath when walking.  (Tr. 406).  Two weeks later, however, Dr. Sookra observed normal lungs and cardiovascular function and no

edema.  (Tr. 402).  A July 17, 2014 echocardiogram showed a LVEF of 64%.  (Tr. 431).  And, while Lohman reported shortness of breath and coughing at her next visit to Dr. Sookra, on August 19, 2014, she denied chest pain and palpitations, and Dr. Sookra observed normal lungs without dyspnea.  (Tr. 397-98).

In the meantime, Lohman saw Carol Rhodes, ARNP and Barry Weckesser, M.D. for a cardiology consultation on July 24, 2014.  (Tr. 519-24).  She denied chest pain, ankle edema, and palpitations, but reported mild shortness of breath with walking and a history of COPD.  (Tr. 519, 522-23).  Ms. Rhodes and Dr. Weckesser noted normal lungs and heart, with the exception of a grade 1/6 murmur, and encouraged more cardiovascular activity.  (Tr. 520, 523).

On August 21, 2014, Lohman saw Laura Barber, M.D. for a COPD consultation, reporting that, for the past couple of months, walking around the house had been difficult.  (Tr. 386).  She reported mild dyspnea on exertion and in hot or humid weather, but denied chest pain, palpitations, and extremity edema.  (*Id.*).  On examination, Dr. Barber observed normal pulmonary and cardiovascular function and no swelling or tenderness in the extremities.  (Tr. 387-88).  She assessed dyspnea on exertion, restrictive lung disease, COPD, and acquired bronchiectasis.  (Tr. 388).

The ALJ discussed this medical evidence, specifically finding that Lohman's cardiac, pulmonary, and musculoskeletal impairments limited her to light work, with additional postural and environmental limitations.  (Tr. 22-24).  Despite arguing that the ALJ's RFC finding is not supported by substantial evidence, Lohman has pointed to no credible evidence requiring greater restrictions and, as such, has shown no error in the ALJ's RFC finding.[6]

---

[6] In her reply brief, Lohman asserts – without specific citation to the record – that "the ALJ incorrectly speculated that her pulmonary and cardiac impairments resolved by early 2014." (Doc. #22 at 4).  This is inaccurate.  In his decision, the ALJ noted that "the longitudinal history

12

> 3.      *The ALJ's Credibility Determination is Supported by Substantial Evidence*

Lohman also argues that the ALJ's credibility analysis was deficient.  (Doc. #16 at 10-

18).  Courts have recognized that determinations of credibility related to a claimant's subjective

complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of

the claimant 'is invaluable, and should not be discarded lightly.'"  *Kirk v. Sec'y of Health &

Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. &

Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, an ALJ's credibility determination will not

be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition

that could reasonably be expected to produce the claimant's alleged symptoms, he must then

consider other evidence of pain, including (1) daily activities; (2) location, duration, frequency,

and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness,

and side effects of any medication; (5) treatment, other than medication, received; (6) any means

used to relieve pain; and (7) other factors concerning functional limitations.  *See* 20 C.F.R.

§404.1529(c)(3).

Here, the ALJ found Lohman's subjective allegations less than fully credible for three

primary reasons.  First, the ALJ noted that Lohman's work and daily activities were inconsistent

with her claims of disabling symptoms and limitations.  (Tr. 23).  As the ALJ noted, Lohman

testified to volunteering three or four days a week, for four hours at a time, at a bingo hall,

stopping only because the bingo hall closed, not because of her impairments.  (Tr. 23, 47).  The

ALJ further cited Lohman's testimony that she cares for her companion (cooking and doing

---

reveals that [Lohman's] *acute* cardiac symptoms had resolved by early 2014 and her respiratory
symptoms were *generally controlled* over the course of 2014."  (Tr. 23 (emphasis added)).
Where this characterization is borne out by the medical evidence discussed above, Lohman has
identified no error.

laundry and light cleaning), drives, and shops in stores, reasonably finding these activities inconsistent with her allegations of disability. (Tr. 23, 35, 38-40, 44-45, 191-92). Second, the ALJ supportably found Lohman less than fully credible because the record did not support her testimony regarding the reason she stopped working. (Tr. 23). Specifically, Lohman testified that she was terminated from her housekeeping position in May 2013 because the neuropathic pain in her left arm prevented her from doing her job. (Tr. 36). As the ALJ noted, however, the record contains no objective evidence confirming neuropathy, and she has not been treated for that condition. (Tr. 23). Finally, the ALJ discounted Lohman's credibility because her allegations of disabling symptoms were inconsistent with the longitudinal medical history. (Tr. 23). As discussed in detail above, although Lohman experienced cardiomyopathy and coronary artery disease with a low LVEF in July 2013 (Tr. 301, 313), by the next month, her LVEF had improved to 65-70%, and her chest pain was described as resolved (Tr. 338). Throughout 2014, Dr. Sookra and consulting physicians generally noted normal cardiac and lung examinations, despite Lohman's subjective reports of occasional cough or shortness of breath, and her physicians actually *encouraged* cardiovascular activity. (Tr. 387, 393, 397-98, 402, 414, 416, 420-21, 487, 492, 496, 520, 523). Thus, the Court finds that the ALJ supportably discounted Lohman's credibility for these three reasons and finds no error warranting remand. *See, e.g., Pickell v. Comm'r of Soc. Sec.*, 2015 WL 5138741, at *5 (E.D. Mich. Sept. 1, 2015) (discounting allegations of disability based on claimant's daily activities); *Hassan v. Comm'r of Soc. Sec.*, 2015 WL 12681368, at *10 (E.D. Mich. Dec. 7, 2015) (ALJ did not err in discounting claimant's credibility where there were "discrepancies between [her] assertions and the objective medical evidence").

####     4.     *Lohman is Not Entitled to a Sentence Six Remand*

Lohman also argues that this case should be remanded pursuant to sentence six of 42 U.S.C. §405(g) for consideration of additional evidence first submitted to the Appeals Council. (Doc. #16 at 3-5). Specifically, Lohman directs the Court's attention to two specific documents: (1) a letter dated August 10, 2015 from Erin Frankowicz, D.O., stating that Lohman was "currently under [her] neurologic care" and "carrie[d] a diagnosis of dystonia involving the bilateral upper extremities"; and (2) a letter dated September 3, 2015 from Amy Brode, D.O., stating that Lohman had "an overactive bladder, urge incontinence and stress incontinence" and that these were "likely chronic problems that will not resolve on the[ir] own." (Tr. 7, 8).

Remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Here, the letters at issue are dated August 10, 2015 and September 3, 2015 (Tr. 7, 8); thus, they can be considered "new" evidence, as they did not exist at the time of the December 2014 hearing. However, even if Lohman could establish "good cause" for her failure to submit these records sooner, she has failed to demonstrate that these records are "material."[7]

---

[7] "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. As this Court has recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *4 (E.D. Mich. Aug. 27, 2012) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Richardson*, 2012 WL 4210619, at *4. Here, the only explanation offered by Lohman

Courts have held that additional evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). In this case, Dr. Brode's and Dr. Frankowicz's letters are not material because they discuss Lohman's condition after the date of the ALJ's decision and give no indication when she developed the conditions discussed or whether (and how) they affected her during the relevant period. *See Emmons v. Comm'r of Soc. Sec.*, 2014 WL 1304936, at *3 (E.D. Mich. Feb. 13, 2014) (denying remand where new evidence did not discuss claimant's condition between the alleged onset date and the date of the ALJ's decision); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (newly submitted evidence was not material where the evidence pertained to a time outside the period adjudicated by the ALJ). Moreover, even if Lohman had a diagnosis of dystonia and bladder issues during the relevant period, she has not "adequately explain[ed] why or how the records submitted would have reasonably persuaded the ALJ to make a different decision for the period at issue." *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *5 (E.D. Mich. Aug. 27, 2012). Accordingly, Lohman has not established that the new evidence is material to the ALJ's decision.[8]

For all of these reasons, Lohman has not established a reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability for the

---

for why she failed to obtain and submit these records any sooner is that they "did not exist prior to the decision, meaning they could not have possibly been submitted prior." (Doc. #16 at 5). *Richardson* makes clear that this is insufficient to satisfy the good cause standard.

[8] Lohman also references a delivery ticket dated March 1, 2015, indicating that she had received portable oxygen and a walker. (Tr. 527). This document was in existence at the time of the ALJ's decision, however, and, thus, is not new evidence warranting a sentence six remand. Moreover, the delivery ticket merely indicates that Lohman *received* certain items, not that they were prescribed by a physician who deemed them medically necessary.

relevant period if presented with the proffered new evidence.  As such, Lohman is not entitled to a sentence six remand.

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [21] be GRANTED, Lohman's Motion for Summary Judgment [16] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: January 12, 2017                                    s/David R. Grand
Ann Arbor, Michigan                                        DAVID R. GRAND
                                                           United States Magistrate Judge


## <u>NOTICE REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 12, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
